**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OPINIONLAB, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: _____ |
| | ) | |
| | ) | **VERIFIED COMPLAINT FOR PATENT** |
| | ) | **INFRINGEMENT, BREACH OF** |
| | ) | **CONTRACT, MISAPPROPRIATION OF** |
| vs. | ) | **TRADE SECRETS, AND TORTIOUS** |
| | ) | **INTERFERENCE WITH BUSINESS** |
| | ) | **EXPECTANCY** |
| | ) | |
| | ) | |
| | ) | |
| IPERCEPTIONS, INC.; | ) | **JURY TRIAL DEMANDED** |
| IPERCEPTIONS US, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND
ATTORNEYS' FEES AND COSTS**</u>

Plaintiff OpinionLab, Inc. (hereinafter "Plaintiff" or "OpinionLab") by its counsel, K&L

Gates LLP, for its Complaint for injunctive relief, damages, and attorneys' fees and costs against

iPerceptions, Inc. and iPerceptions US, Inc., (hereinafter "Defendants") alleges as follows:

<u>**NATURE OF THE COMPLAINT**</u>

1.      This is an action for knowing, willful, deliberate, and intentional: (a) patent

infringement in violation of 35 U.S.C. § 1, *et seq*.; (b) breach of a non-disclosure agreement; (c)

misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1

*et seq*; and (d) tortious interference with a business expectancy in violation of the common law

of the State of Illinois.

2.     This action arises from Defendants' unauthorized, intentional, and willful infringement of OpinionLab's patents and patented technology in its competing web-based data collection, analysis, and reporting business; iPerceptions, Inc.'s willful disregard for and breach of a non-disclosure agreement pursuant to which OpinionLab disclosed highly-sensitive, confidential, and proprietary information to iPerceptions, Inc.; Defendants' misappropriation and use of OpinionLab's trade secrets; and their   intentional interference in OpinionLab's relationships with existing and prospective customers.   By its Complaint, Plaintiff seeks preliminary and permanent injunctions, and the recovery of actual damages, treble damages, profits, costs, attorneys' fees, punitive damages and other relief as more fully set forth below.

## THE PARTIES

3.     OpinionLab, Inc. is a Delaware Corporation with its principal place of business in this judicial district located at 600 Central Ave, Suite 265, Highland Park, Illinois.  OpinionLab is duly registered to conduct business within this state. OpinionLab is an industry leading provider of online user feedback and web page analytical solutions that allow OpinionLab's customers to analyze data collected from Internet users regarding their online experiences with respect to web pages and other aspects of the customer's website (the "Page-Specific Online User Feedback Technology"). OpinionLab has been operating successfully for over a decade in this technological space and offers and licenses its Page-Specific Online User Feedback Technology to several companies located within this judicial district.

4.     iPerceptions, Inc. is a Canadian Corporation with its principal place of business at 4999 Sainte-Catherine St. West, Suite 500, Montreal H3Z 1T3 Quebec, Canada.  iPerceptions, Inc. is the named registrant of the domain name http://www.iperceptions.com --one website, among others, where the infringing products and services are used and offered for sale to the public.

5.     iPerceptions US, Inc. is a Delaware Corporation with its principal place of business at 575 Madison Ave., Suite 1006, New York, NY 10022-8511.  On information and belief, iPerceptions is owned or otherwise controlled by iPerceptions, Inc.  iPerceptions US, Inc., is also using and offering the infringing products and services for sale to the public through the iperceptions.com website and engaging in other violations of law as set forth in more detail herein.

## SUBJECT MATTER JURISDICTION

6.     This is an action for patent infringement, pursuant to 35 U.S.C. § 1, *et seq.* and for breach of contract, misappropriation of trade secrets, and tortious interference with business expectancy.

7.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) on the claims for patent infringement and has supplemental jurisdiction under 28 U.S.C. § 1367 on the common law claims.

## PERSONAL JURISDICTION

8.     Personal jurisdiction over Defendants is proper under the laws of the State of Illinois, pursuant to Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.  On information and belief, Defendants either reside in this judicial district, conduct business in this judicial district and/or the unlawful and tortious acts complained of herein have occurred within and/or extend to or affect OpinionLab within this judicial district.  More specifically, on information and belief, this Court has personal jurisdiction over Defendants because: (i) the injury resulting from Defendants' patent infringement and related offenses will be felt primarily by OpinionLab in Illinois where Plaintiff is located and Defendants are well aware of Plaintiff's existence and

operation in this judicial district; (ii) Defendants market, promote, advertise, distribute and/or sell products and services to customers located in Illinois on a regular, continuous and systematic basis; and (iii) Defendants market and sell their data collection, analysis, and reporting products and services in Illinois which, as alleged herein, infringe OpinionLab's patent rights and constitutes tortious violations in the State of Illinois.

## VENUE

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and/or 1400 because Defendants are subject to personal jurisdiction in this district and have committed acts of direct and/or indirect patent infringement and other tortious conduct in this district and from which this action arises.

## GENERAL ALLEGATIONS

**A.     Background Regarding OpinionLab and Its Highly-Regarded Page-Specific Online User Feedback Technology.**

10.     OpinionLab is a true pioneer in the development of web-based interactive user feedback technology.  OpinionLab's Page-Specific Online User Feedback Technology solicits and collects subjective feedback concerning individual web pages of a website from Internet users.  The collected information is analyzed and reported to interested parties, such as the owner of the website so that the owner can optimize the site to enhance the end user's experience.

11.     OpinionLab has developed important technological advances in the field of web-based interactive user feedback collection, analysis, and reporting.  OpinionLab has filed for and obtained numerous United States and foreign patents covering various aspects of its web-based interactive user feedback technology.  The issued U.S. patents include, but are not limited to, the following:  U.S. Patent 6,421,724 ("the '724 patent"); U.S. Patent 6,606,581 ("the '581 patent"); U.S. Patent 6,928,392 ("the '392 patent"); U.S. Patent 7,085,820 ("the '820 patent"); U.S. Patent

7,370,285 ("the '285 patent"); U.S. Patent 8,024,668 ("the '668 patent"); and U.S. Patent 8,041,805 ("the '805 patent") (collectively the "OpinionLab Patents"). True and correct copies of the OpinionLab Patents are attached hereto as Exhibits 1-7.

12. OpinionLab has also developed and implemented proprietary and trade secret designs and techniques for the collection, analysis, and reporting of web-based interactive user feedback.

13. OpinionLab has developed an enviable list of clients that use its Page-Specific Online User Feedback Technology, including many of the world's largest and most innovative companies. A true and correct copy of many of OpinionLab's clients that have licensed OpinionLab's Page-Specific Online User Feedback Technology is attached hereto as Exhibit 8.

14. OpinionLab has been the recipient of many awards, accolades, and recognition for its cutting-edge and innovative technological business solutions. Just within the last few weeks, OpinionLab was featured in an article in *Craine's Chicago Business* entitled "Call It The Eureka Index." A true and correct copy of the article is attached hereto as Exhibit 9. The article details the 25 most innovative companies in the Chicago area. OpinionLab was noted for its innovative technological developments and for having the 2nd most "valuable patent portfolio."

**B. iPerceptions, Inc. Approached OpinionLab About a Possible Business Combination.**

15. In 2009, the Chief Executive Officer and co-founder of OpinionLab, Mr. Rand Nickerson, was contacted by Mr. Jerry Tarasofsky who at the time was the Chief Executive Officer of iPerceptions, Inc., a Canadian-based, publicly-traded company. During that initial conversation, and in conversations thereafter, Mr. Tarasofsky made it clear iPerceptions, Inc. was aware of OpinionLab's extensive patent portfolio and that iPerceptions, Inc. was interested in a business combination with OpinionLab.

16.     OpinionLab and iPerceptions, Inc. thereafter entered into a Mutual Non-Disclosure Agreement (the "NDA" or "Agreement") on April 29, 2009.  A true and correct copy of the NDA is attached hereto as Exhibit 10.  The purpose of entering into the NDA was to allow the parties to discuss certain sensitive technical and financial information in connection with the above-referenced business proposal.

17.     The NDA provides for protection of both parties' proprietary and confidential information and specifically states that:

> Each party agrees that at all times and notwithstanding any termination or expiration of this Agreement it will hold in strict confidence and not disclose to any third party Confidential Information of the other, except as approved in writing by the other party to this Agreement, ***and will use the Confidential Information for no purpose other than evaluating or pursuing a business relationship with the other party to this Agreement***.

NDA, ¶ 3 (emphasis supplied).

18.     The NDA also memorializes the irreparable harm associated with any breach of the Agreement and provides for immediate, injunctive relief:

> "[e]ach party acknowledges that its breach of the Agreement will cause irreparable damage and hereby agrees that the other party shall be entitled to seek injunctive relief under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction."

NDA, ¶ 11.

19.     Pursuant to the NDA, iPerceptions, Inc. obtained access to and acquired substantial amounts of proprietary and confidential information related to several aspects of OpinionLab's business.

20.     For example, in December of 2009, Mr. Nickerson and Mr. Mark Treschl, the President and co-founder of OpinionLab, initially met with the new Chief Executive Officer of iPerceptions, Inc. Mr. Claude Guay, in Toronto, Ontario.  In reliance on Mr. Guay's and

iPerceptions' promise of confidentiality, OpinionLab disclosed confidential information regarding its business during this initial meeting.

21.     In January 2010, Mr. Nickerson, Mr. Mark Treschl, and Mr. Rick Blair, the Chief Information Officer of OpinionLab, traveled to Montreal, Quebec, to meet with representatives of iPerceptions, Inc.  Mr. Claude Guay, Mr. François-Charles Sirois, and Denis Sirois of iPerceptions, Inc. were in attendance at that meeting.  At the urging and request of the iPerceptions' executives, Mr. Nickerson, Mr. Treschl, and Mr. Blair proceeded to disclose numerous highly-confidential and proprietary facts about OpinionLab's business model, including but not limited to:

(a)    an extensive demonstration of OpinionLab's Page-Specific Online User Feedback Technology, including both the web interface and "back end" functionalities;

(b)    the customers that licensed OpinionLab's Page-Specific Online User Feedback Technology;

(c)    detailed information regarding the amount of money charged by OpinionLab to its customers to license OpinionLab's Page-Specific Online User Feedback Technology;

(d)    detailed information regarding annual and projected revenues for OpinionLab; and

(e)    detailed information regarding the number of OpinionLab employees and where those employees were located.

22.     During the course of this January 2010 meeting and thereafter, it became clear to OpinionLab that iPerceptions, Inc. simply wanted to purchase OpinionLab for the purpose of obtaining the OpinionLab Patents and OpinionLab customers.  Because Mr. Nickerson and Mr. Treschl did not believe iPerceptions' proposals and overtures would in the best interest of

OpinionLab, further discussions regarding a proposed combination between the companies were not given serious consideration by OpinionLab.

**C. In 2012, iPerceptions Launched Its "webValidator" On-line Software Program with Comment Cards In Order to Directly Compete with OpinionLab's Page-Specific Online User Feedback Technology.**

23.     On March 5, 2012 iPerceptions revealed a web page-specific, product-specific, and feature-specific data collection product and technology—its webValidator software including the associated "Comment Cards"—at the eMetrics Marketing Optimization Summit in San Francisco, California. Mark Treschl and Mr. Jonathan Levitt, the Chief Marketing Officer at OpinionLab, were also in attendance at the Summit.

24.     On the evening of March 5, 2012, Mr. Levitt spoke with the iPerceptions, Inc. Senior Sales Executive at the time, Mr. Daniel Taras. During the course of that conversation, Mr. Taras admitted to Mr. Levitt that iPerceptions was losing clients as a result of not being able to compete with OpinionLab's page-specific level data gathering and that iPerceptions' customers were asking for a solution that provided more page-specific data and related information. Mr. Levitt explained to Mr. Taras that several of OpinionLab's patents covered page-specific data gathering technologies. Mr. Taras acknowledged that he and other executives at iPerceptions, Inc. were aware of OpinionLab's patent portfolio but decided to launch this new comment card technology and thereby take a "calculated risk" that OpinionLab would not initiate legal proceedings. Mr. Taras also acknowledged that Mr. Claude Guay—by now the former Chief Executive Officer of iPerceptions, Inc.—approved of the decision to move forward with the infringing conduct.

25.     Later that same evening, Mr. Levitt had a similar conversation with Mr. Duff Anderson, the Vice President of Insights at iPerceptions, Inc., who also was equally candid and

forthcoming regarding iPerceptions, Inc.'s blatantly-infringing intentions. Mr. Anderson stated that it was a "conscious decision" to rollout the "comment card" platform as a means to compete directly with OpinionLab's Page-Specific Online User Feedback Technology. Mr. Anderson made the comment several times during the conversation that it was "not fair" that OpinionLab could offer client surveys, but that iPerceptions could not offer comment cards. Three of Mr. Anderson's most salient and instructive comments to Mr. Levitt that evening were: (i) "You can't stop the market from evolving"; (ii) "We have no choice in order to survive"; and (iii) "maybe this will make OpinionLab want to just buy us out and remove the threat from the market."

26. Also during the eMetrics Marketing Optimization Summit, Mr. Treschl approached the iPerceptions, Inc. booth that was being tended to by Mr. Guay and Mr. Anderson. Mr. Treschl noticed that on the LCD displays inside the booth was a version of iPerception's webValidator with Comment Cards software operating on a "mocked-up" version of the Vonage.com website. At the time, Vonage was a client of OpinionLab's and had licensed the Page-Specific Online User Feedback Technology. Mr. Anderson stated that iPerceptions "did not want to" release its webValidator software with Comments Cards to Vonage, but was told by Vonage that iPerceptions must offer this if they wanted to do business with Vonage. Mr. Treschl told both Mr. Guay and Mr. Anderson that the webValidator demo infringed on several OpinionLab patents.

27. After iPerceptions, Inc. attended the eMetrics Marketing Optimization Summit in San Francisco, a news release was posted on iperceptions.com announcing the introduction of the iPerceptions' "Comment Cards to Turn Online Complaints into Actionable CRM." A copy of the new release is provided as Exhibit 11 hereto, and can be accessed at

http://www.iperceptions.com/news/iperceptions-introduces-comment-cards-turn-online-complaints-actionable-crm/.

**D. iPerceptions Targets OpinionLab's Customers And Offers To Provide The Competing and Infringing webValidator With Comment Cards Software For Less Money Than OpinionLab Provides Its Page-Specific Online User Feedback Technology.**

28.     As a result of OpinionLab providing extensive and highly-confidential and proprietary information to iPerceptions, Inc., it was in a position to exploit and misappropriate that information by offering OpinionLab's customers the competing and infringing webValidator with Comments Cards solution as a "less expensive" alternative.

29.     On approximately March 27, 2012, Mr. Kevin Pento of Vonage.com informed Mr. Rob Love of OpinionLab that Vonage.com would not renew its contract with OpinionLab but was instead going to license the webValidator with Comment Cards solution from iPercpetions.  Mr. Pento's stated reason for doing so was due to the fact that iPerceptions could offer its solution at a lower price.  Further, within the last several weeks, two other current customers of OpinionLab have indicated that they have been approach by an OpinionLab "competitor" that is offering to provide page-specific online user feedback technology that would directly compete with OpinionLab's Page-Specific Online User Feedback Technology.   On information and belief, the "competitor" is Defendants.

**E. The Competing and Infringing webValidator Software With Comment Cards Is Now "Live" on Both Vonage.com and iPerceptions.com.**

30.     iPerceptions has in fact released its updated webValidator with Comment Cards software into the marketplace.  The news release referred to in ¶ 27 above and provided as Exhibit 11 hereto explains that "iPerceptions' Comment Cards will be immediately available to current webValidator clients, and available as a standalone solution starting in June 2012."

31.     Within just the last two weeks, the Defendants' competitive and infringing webValidator software with Comment Cards was made available on the Vonage.com website.

32.     Below is a screen shot of the home page of the Vonage.com web site.  The web page has a "Feedback" icon in the upper right corner.



33.     When a user hovers a cursor over the "Feedback" icon, a balloon with two link options appears: "I'm a customer" and "I'm not a customer," as shown below.



34.     Clicking on either the "I'm a customer" or the "I'm not a customer" links causes the iPerceptions comment card to appear in a window on the Vonage.com home web page, as shown below.   The iPerceptions comment card is identical for both the "I'm a customer" and "I'm not a customer" links.



35.     The iPerceptions comment cards are available via the upper right-hand corner "Feedback" icon on multiple web pages at the Vonage.com web site.

36.     The iPerceptions comment cards that are available on pages of the Vonage.com web site allow a user to rate the web pages for recommendation using a rating scale that has a positive rating (10 – "Extremely likely"), a negative rating (0 – "Not at all likely"), and a neutral rating (5).

37. The iPerceptions comment cards that are available on pages of the Vonage.com web site allow a user to provide open-ended comments on the web page by clicking on the "Like," "Suggestion/comment" or "Dislike" icons, which each upon activation cause a free form text box to appear in which the user can type open-ended comments pertaining to the web page. The user can indicate that his/her comments pertain to the specific web page by selecting the "website – this page" option from the "Which of the following best describes the focus of your comment" drop down menu, as shown below:



38.     The     URL     for     the     iPerceptions     comment     card     is     http://ips-comment.iperceptions.com/UIF/UIFMain.aspx?lid=1&rn=108096&pID=1&referrer=http://www.vonage.com/&hv1=OmniKey~[CS]v1|27FB94780507A933-40000103400017E3[CE], which is different from the URL for the Vonage.com home web page, which is http://www.vonage.com/, on which the iPerceptions' comment card is displayed.

39.     The iPerceptions comment card is also currently available at the iPerceptions web site, www.iperceptions.com.

40.     Below is a screen shot from the iperceptions.com homepage.  The iPerceptions comment card can be launched in a pop-up window when the user clicks the balloon feedback icon in the lower right-hand corner of the web page:



Icon to launch online comment card

41.     The screen shot below shows the online comment card that is displayed in a pop-up window when the user clicks on the balloon feedback icon:



**Pop-up window with online comment card**

42.     Below is a more detailed image of the iPerceptions online comment card available from the iPerceptions website:



43.     As shown above, this iPerceptions comment card allows the user to rate the web page for recommendation using a rating scale that has a positive rating (10 – "Extremely likely"), a negative rating (0 – "Not at all likely"), and a neutral rating (5).

44.     This iPerceptions comment card also allows the user to provide open-ended comments on the web page by clicking on the "Suggestion," "Dislike" or "Praise" icons, which each upon activation cause a free form text box to appear in which the user can type open-ended comments pertaining to the web page.  The user can indicate that his/her comments pertain to the

specific web page by selecting the "website – this page" option from the "Which of the following best describes the focus of your comment" drop down menu, such as shown below:



45. Below is an image of the iPerceptions comment card when the user clicks the "Suggestion" icon shown above. Upon clicking the "Suggestion" icon, a free form text box is displayed where the user can insert open-ended, textual suggestions for the web page.



46. The URL for the server for the comment card for the iPerceptions website shown in the immediately prior paragraph is ips-mobile.iperceptions.com/UIF/UIFMain.aspx?lid=1&rn=107472&referrer= http%3A%2F%2Fwww.iperceptions.com%2F, which is different from the URL for the iPerceptions' homepage, iperceptions.com.

47.     The balloon feedback icon in the lower right-hand corner of the iPerceptions web page remains in the lower right-hand corner of the iPerceptions web page even when the user scrolls up and down the iPerceptions web page.

48.     The balloon feedback icon is displayed on multiple web pages of the iPerceptions web site.

49.     The news release referred to in ¶ 30 above and provided as Exhibit 11 hereto states that the iPerceptions comment cards "give website visitors the opportunity to offer suggestions, explain dislikes or give praise about any issue – using their own words."

50.     The news release referred to in ¶ 30 above and provided as Exhibit 11 hereto further explains that, "Website visitors are asked to identify the nature of their feedback up-front, which enables companies to segment the comments by type in order to isolate specific issues, get advice, or see what they're doing right."

51.     iPerceptions performs analytics and generates reports based on the comments received from website visitors (i.e., end-users) via the iPerceptions comment cards.

52.     The news release referred to in ¶ 30 above and provided as Exhibit 11 hereto explains:

> Comments are analyzed using an interactive dashboard, which includes one-click concept qualification of the open-ended feedback. The results can be displayed on a score card or trended over time, either by page, section or site-wide. Additional segmenting variables include number of respondents, referral ratings, Net Promoter scores, and comment types (dislikes, suggestions, likes).

**FIRST CAUSE OF ACTION**
**(FEDERAL PATENT INFRINGEMENT UNDER THE 35 U.S.C. §1, *et seq.* )**

**(*Against Both Defendants*)**

A.    _Infringement of the '724 Patent_

53.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-52 of this Complaint, as though they were fully set forth herein.

54.    On July 16, 2002, the United States Patent and Trademark Office ("USPTO") issued the '724 patent, entitled "Web Site Response Measurement Tool."  A true and correct copy of the '724 patent is provided as Exhibit 1.

55.    OpinionLab is the owner of the '724 patent by assignment.

56.    Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '724 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, *et seq.*, by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '724 patent, including but not limited to claims 4, 8 and 9 of the '724 patent, through, but not limited to, the iPerceptions' and Vonage web page comment cards.

57.    For indirect infringement, the direct infringers of the '724 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

58.    iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '724 patent.

59.     Based on information and belief, Defendants knew that their and their customers' acts of providing the iPerceptions' online comment cards to web page end-users constituted infringement of the '724 patent.

60.     Defendants are not, and have not been at any time, licensed under the '724 patent.

61.     Upon information and belief, Defendants foregoing acts of infringement have been and continue to be willful and deliberate.

62.     OpinionLab has been damaged by the foregoing acts of infringement of the '724 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

### B.      *Infringement of the '581 Patent*

63.     OpinionLab realleges and incorporates herein ¶¶ 1-62 above as if fully set forth herein.

64.     On August 12, 2003, the USPTO issued the '581 patent, entitled "System and Method for Measuring and Reporting User Reactions to Particular Web Pages of a Website."  A true and correct copy of the '581 patent is provided as Exhibit 2.

65.     OpinionLab is the owner of the '581 patent by assignment.

66.     Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '581 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, *et seq*., by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '581 patent,

including but not limited to claims 1, 2, 11, 13, 17, 19, 20, 29, and 31 of the '581 patent, through, but not limited to, the iPerceptions' and Vonage web page comment cards.

67. For indirect infringement, the direct infringers of the '581 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

68. iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '581 patent.

69. Based on information and belief, Defendants knew that their and their customers' acts of providing the iPerceptions and Vonage online comment cards to web page end-users constituted infringement of the '581 patent.

70. Defendants are not, and have not been at any time, licensed under the '581 patent.

71. Upon information and belief, Defendants foregoing acts of infringement have been and continue to be willful and deliberate.

72. OpinionLab has been damaged by the foregoing acts of infringement of the '581 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

C. <u><i>Infringement of the '392 Patent</i></u>

73. OpinionLab realleges and incorporates herein ¶¶ 1-72 above as if fully set forth herein.

74. On August 9, 2005, the USPTO issued the '392 patent, entitled "Collecting a User Response to an Explicit Question Specifically Concerning a Particular Web Page of a Website." . A true and correct copy of the '392 patent is provided as Exhibit 3.

75. OpinionLab is the owner of the '392 patent by assignment.

76.     Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '392 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, et seq., by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '392 patent, including but not limited to claims 1-2, 5, 13-15, 18, 26-27, 30 and 38 of the '392 patent, through, but not limited to iPerceptions' and Vonage's web page comment cards.

77.     For indirect infringement, the direct infringers of the '392 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

78.     iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '392 patent.

79.     Based on information and belief, Defendants knew that their and their customers acts of providing the iPerceptions and Vonage online comment cards to web page end-users constituted infringement of the '392 patent.

80.     Defendants are not, and have not been at any time, licensed under the '392 patent. Upon information and belief, Defendants' foregoing acts of infringement have been and continue to be willful and deliberate.

81.     OpinionLab has been damaged by the foregoing acts of infringement of the '392 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

D.    *Infringement of the '820 Patent*

82.    OpinionLab realleges and incorporates herein ¶¶ 1-81 above as if fully set forth herein.

83.    On August 1, 2006, the USPTO issued the '820 patent, entitled "System and Method for Reporting to a Website Owner User Reactions to Particular Web Pages of a Website." A true and correct copy of the '717 patent is provided as Exhibit 4.

84.    OpinionLab is the owner of the '820 patent by assignment.

85.    Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '820 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, et seq., by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '820 patent, including but not limited to claims 1-3, 10-11, 15, 18, 20, 25-27, 34 and 42 of the '820 patent, through, but not limited to iPerceptions' and Vonage's web page comment cards.

86.    For indirect infringement, the direct infringers of the '820 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

87.    iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '820 patent.

88.    Based on information and belief, Defendants knew that their and their customers acts of providing the iPerceptions online comment cards to web page end-users constituted infringement of the '820 patent.

89.     Defendants are not, and have not been at any time, licensed under the '820 patent. Upon information and belief, Defendants' foregoing acts of infringement have been and continue to be willful and deliberate.

90.     OpinionLab has been damaged by the foregoing acts of infringement of the '820 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

E.     *Infringement of the '285 Patent*

91.     OpinionLab realleges and incorporates herein ¶¶ 1-90 above as if fully set forth herein.

92.     On May 6, 2008, the USPTO issued the '285 patent, entitled "Receiving and Reporting Page-Specific User Feedback Concerning One or More Particular Web Pages of a Website." A true and correct copy of the '285 patent is provided as Exhibit 5.

93.     OpinionLab is the owner of the '285 patent by assignment.

94.     Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '285 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, et seq., by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '285 patent, including but not limited to claims 1, 3, 9, 11 18, 22, 25, 30, 34 and 37 of the '285 patent, through, but not limited to, iPerceptions' and Vonage's web page comment cards available.

95.     For indirect infringement, the direct infringers of the '285 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

96.     iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '285 patent.

97.     Based on information and belief, Defendants knew that their and their customers' acts of providing the iPerceptions and Vonage online comment cards to web page end-users constituted infringement of the '285 patent.

98.     Defendants are not, and have not been at any time, licensed under the '285 patent.

99.     Upon information and belief, Defendants' foregoing acts of infringement have been and continue to be willful and deliberate.

100.    OpinionLab has been damaged by the foregoing acts of infringement of the '285 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

<em>F.     Infringement of the '668 Patent</em>

101.    OpinionLab realleges and incorporates herein ¶¶ 1-100 above as if fully set forth herein.

102.    On September 20, 2011, the USPTO issued the '668 patent, entitled "Receiving and Reporting Page-Specific User Feedback Concerning One or More Particular Web Pages of a Website." A true and correct copy of the '668 patent is provided as Exhibit 6.

103.    OpinionLab is the owner of the '668 patent by assignment.

104.    Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '668 patent, literally and/or under the doctrine of equivalents, as

proscribed by 35 U.S.C. § 271, *et seq.*, by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '668 patent, including but not limited to claims 1, 3, 9, 10-11, 13 and 19 of the '668 patent, through, but not limited to, iPerceptions' and Vonage's web page comment cards.

105.    For indirect infringement, the direct infringers of the '668 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

106.    iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '668 patent.

107.    Based on information and belief, Defendants knew that their and their customers' acts of providing the iPerceptions' and Vonage online comment cards to web page end-users constituted infringement of the '668 patent.

108.    Defendants are not, and have not been at any time, licensed under the '668 patent.

109.    Upon information and belief, Defendants' foregoing acts of infringement have been and continue to be willful and deliberate.

110.    OpinionLab has been damaged by the foregoing acts of infringement of the '668 patent by Defendants and will continue to be damaged by such infringement unless enjoined by this Court.

## G.    *Infringement of the '805 Patent*

111.    OpinionLab realleges and incorporates herein ¶¶ 1-110 above as if fully set forth herein.

112.    On October 18, 2011, the USPTO issued the '805 patent, entitled "System and Method for Reporting to a Website Owner User Reactions to Particular Web Pages of a Website."  A true and correct copy of the '805 patent is provided as Exhibit 7.

113.    OpinionLab is the owner of the '805 patent by assignment.

114.    Defendants are now and/or have been directly, indirectly, contributorily, and/or by inducement infringing the '805 patent, literally and/or under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, *et seq.*, by, without permission or authority from OpinionLab, selling, offering to sell, making, using, contributing to others' use and sale of, and/or inducing others to use and sell within the United States, including this District, products and/or components of products and/or services that infringe at least one claim of the '805 patent, including but not limited to claims 1-2, 6, 8, 10-11, 15, 17, 18-19, 23, 25-27, 31 and 33 of the '805 patent, through, but not limited to, iPerceptions' and Vonage's web page comment cards.

115.    For indirect infringement, the direct infringers of the '805 patent include iPerceptions' customers that use iPerceptions' online comment cards and/or end-users of the websites of both iPerceptions and Vonage.

116.    iPerceptions' online comment cards and associated software have no substantial use other than infringement of the '805 patent.

117.    Based on information and belief, Defendants' knew that their and their customers' acts of providing the iPerceptions' and Vonage online comment cards to web page end-users constituted infringement of the '805 patent.

118.    Defendants are not, and have not been at any time, licensed under the '805 patent.

119.    Upon information and belief, Defendants' foregoing acts of infringement have been and continue to be willful and deliberate.

120.     OpinionLab has been damaged by the foregoing acts of infringement of the '805 patent by Defendants and will continue to be irreparably damaged by such infringement unless enjoined by this Court.

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT )

### *(Against iPerceptions, Inc.)*

121.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-120 of this Complaint, as though they were fully set forth herein.

122.     In exchange for express promises of iPerceptions, Inc. under the NDA, OpinionLab disclosed to iPerceptions, Inc. certain proprietary and confidential information regarding OpinionLab's web-based user feedback business.

123.     As detailed above, and upon further information and belief, iPerceptions, Inc. has failed to hold in strict confidence the proprietary and confidential information of OpinionLab acquired pursuant to the NDA, and has used and continues to use that proprietary and confidential information for purposes other than evaluating or pursuing a business relationship with OpinionLab.

124.     Upon information and belief, iPerceptions, Inc. has disclosed and/or used OpinionLab's proprietary and confidential information in competing with OpinionLab with respect to its web-based user feedback business.

125.     OpinionLab has performed and continues to perform all of its obligations under the NDA.

126.     As a proximate result of the acts of iPerceptions, Inc. as alleged herein, OpinionLab has suffered and will continue to suffer significant, immediate, and irreparable damage to its business, while iPerceptions, Inc. profits at Plaintiff's expense.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE ILLINOIS TRADE SECRETS ACT 765 ILCS 1065/1 *et seq*)

### (*Against Both Defendants*)

127.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-126 of this Complaint, as though they were fully set forth herein.

128.     The proprietary and confidential information disclosed to iPerceptions, Inc. pursuant to the NDA included competitively sensitive information, including but not limited to technical and non-technical information relating to OpinionLab's software, methods, techniques, and/or processes for collecting, analyzing, and reporting web-based user feedback.     On information and belief, all of the Defendants knew of the confidential and proprietary nature of the information disclosed by OpinionLab to iPerceptions, Inc.

129.     Pursuant to the NDA, iPerceptions, Inc. obtained access to and acquired OpinionLab's proprietary and confidential information with knowledge that it acquired that information under circumstances giving rise to a duty to maintain its secrecy and or limit its use. Upon information and belief, iPerceptions, Inc. disclosed that proprietary and confidential information to representatives of iPerceptions US, Inc., and said representatives knew or should have known the disclosure to them was improper.

130.     Upon information and belief, Defendants misappropriated, disclosed, and/or used OpinionLab's trade secrets in competing with OpinionLab.

131.     Upon information and belief, such acts of the Defendants aforesaid are being done willfully and maliciously.

132.     As a proximate result of the acts of Defendants as alleged herein, OpinionLab has suffered and will continue to suffer significant damage to its business, while Defendants profit at Plaintiff's expense.

133.    OpinionLab has no adequate remedy at law for this misappropriation of its trade secrets.  Unless Defendants are enjoined by the Court, Plaintiff will continue to suffer irreparable harm.

## FOURTH CAUSE OF ACTION
**(TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE  – VIOLATION OF ILLINOIS COMMON LAW)**

**(*Against Both Defendants*)**

134.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-133 of this Complaint, as though they were fully set forth herein.

135.    OpinionLab had particular and existing and prospective business relationships with customers with whom OpinionLab would have done business but for Defendants' unlawful behavior.

136.    Defendants knew of OpinionLab's existing and prospective relationships with these customers.

137.    Upon information and belief, through dishonest, unfair, and/or improper means Defendants intentionally interfered with OpinionLab's existing and prospective relationships with these customers.

138.    Defendants' interference caused injury to OpinionLab's existing and prospective relationships with these customers, in an amount in excess of the jurisdictional requirements of this Court.

139.    OpinionLab has no adequate remedy at law for this tortious conduct engaged in by Defendants.  Unless Defendants are enjoined by the Court, Plaintiff will continue to suffer irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, OpinionLab prays for an order and judgment as follows:

a.      That the '724, '581, '392, '820, '285, '688, and '805 Patents are valid and enforceable;

b.      That Defendants have infringed the '724, '581, '392, '820, '285, '688, and/or '805 Patents;

c.      That Defendants' infringing actions have been willful, deliberate, and intentional;

d.      That Defendants be ordered to make or be subjected to a full accounting for and pay OpinionLab all damages to which OpinionLab is entitled (together with prejudgment interest and OpinionLab's costs and disbursements) as a consequence of Defendants' infringing acts in accordance with 35 U.S.C. § 284, including but not limited to a reasonable royalty for Defendants' use of the patented technology and/or OpinionLab's lost profits;

e.      That such damages be trebled for the willful, deliberate, and intentional nature of Defendants' infringing acts as set forth above;

f.      That this case be declared exceptional, and that plaintiff OpinionLab be awarded their reasonable attorneys' fees herein, in accordance with 35 U.S.C. § 285;

g.      That a preliminary and permanent injunction be entered prohibiting the further manufacture, sale, offer for sale, use or importation by Defendants of all infringing products and services;

h.      That iPerceptions, Inc. intentionally breached the NDA entitling OpinionLab to injunctive relief, damages, and attorneys' fees and costs;

i.      That Defendants engaged in a willful violation of the Uniform Trade Secrets Acts and that OpinionLab is entitled to actual damages, treble damages, and attorneys' fees and costs for said violations;

j.      That Defendants engaged in tortious interference with a prospective economic advantage and that that OpinionLab be awarded exemplary and punitive damages and attorneys' fees under Illinois law for Defendants' willful, intentional, and tortious acts;

k.      That Plaintiff be entitled to undertake expedited discovery to ascertain the extent of Defendants' breach of the NDA and/or misappropriation of trade secrets;

l.      That OpinionLab be awarded such other and further relief as this Court may deem just and equitable for Defendant's wrongful actions.

## **JURY DEMAND**

Plaintiff hereby demands and requests a trial by jury on all issues so triable.

Dated: July 18, 2012                                 Respectfully submitted,

                                                    K&L GATES LLP


                                            By:     /s/ *J. Michael Keyes*
                                                    _____

                                                    J. Michael Keyes (Gen. Bar #29215)
                                                    K&L GATES LLP
                                                    618 W. Riverside Ave., Ste. 300
                                                    Spokane, WA  99201
                                                    Telephone:  509.624.2100
                                                    Facsimile:  509.456.0146

                                                    Robert J. Barz (#6285709)
                                                    K&L GATES LLP
                                                    70 W. Madison St., Ste. 3100
                                                    Chicago, IL  60602
                                                    Telephone:  312.372.1121
                                                    Facsimile:  312.827.8000

                                                    Attorneys for Plaintiff, OpinionLab, Inc.

State of North Carolina    )
                               )     SS
County of New Hanover    )

## **VERIFICATION**

I, Rand Nickerson, declare:

    I am the Chief Executive Officer of OpinionLab, Inc., the Plaintiff in this action. I am authorized to provide this Verification.

    I have read the foregoing Complaint and know the contents thereof. I declare under penalty of perjury under the laws of the State of North Carolina and the United States of America that the factual averments and allegations set forth above in the Complaint are true and correct to the best of my knowledge.

EXECUTED this _17th_ day of July, 2012 at Wilmington, North Carolina.

_____
RAND NICKERSON

SUBSCRIBED and SWORN to before me
this _17th_ day of _July_ 2012.

_____
NOTARY PUBLIC

Kristen T. Shaheen
NOTARY PUBLIC
New Hanover County, NC

My commission expires: _2/2/15_